Samuel Fails, S.
In this accounting proceeding, the executors have requested a construction of testator’s will which includes two codicils to determine whether they are required to sell certain closely held stock owned by decedent to the other stockholders of such corporation in accordance with a formula contained in testator’s will, or whether such stock may be delivered in kind to the widow of testator as residuary legatee upon her offer to advance the amount of cash required to discharge any and all debts and administration expenses.
The testator died on June 26, 1952, a resident of Westchester County, and his will and two codicils dated June 6,1950, September 1, 1950, and November 17, 1950, respectively, were duly admitted to probate and letters testamentary thereon were issued to the petitioners on August 5, 1952.
Schedule “A” of the account sets forth principal assets therein valued at approximately $286,000 and includes shares of common stock therein of Waddington Milk Company, Inc., hereinafter referred to as the Corporation, valued at $234,360. Except for general legacies in the amount of $27,000 which were given to certain named relatives and employees, testator bequeathed his entire estate to his widow as sole residuary beneficiary. Under article ‘ ‘ First ’ ’ of the first codicil, the executors are directed to offer 20% of decedent’s stock in the corporation to the other stockholders of record at a price to be determined in accordance with a formula contained in the will and the executors have complied with such direction. The second paragraph of article “First” of the first codicil provides as follows: “ The remaining eighty (80%) percent of the common stock of Waddington Mxlk Co. Inc. owned by me at the time of my death shall not be sold by my Executors unless and until it becomes necessary to sell part or all of the said common stock in order to raise sufficient monies to pay all the bequests mentioned in paragraphs ‘ Third ’ through ‘ Thirteenth ’ of my said Last Will and Testament and debts, taxes, administration, funeral and other expenses of my estate. However, before any part of this eighty (80%) percent of my common stockholdings in Waddington Milk Co. Inc. is sold, *551 all other assets owned by me at the time of my death not otherwise specifically disposed of by me shall first be sold in order to provide the necessary funds to pay for my bequests and debts and expenses as herein stated and then only so much of the balance of my common stock of Waddington Milk Co. Inc. shall be sold as is required to raise the necessary funds as herein stated.”
Admittedly, the estate assets, exclusive of the balance of stock of the corporation are insufficient to satisfy all estate obligations. However, the widow opposes the sale of any common stock in the corporation as well as the sale of the preferred stock of said corporation or the common stock of Oakdale Farms, Inc., on the grounds that she is willing and able to advance sufficient moneys to the executors to discharge all of such obligations. If the plan advanced by the testator’s widow were approved by this court, she would receive all of the aforesaid stock in kind and the other stockholders of Waddington Milk Company, Inc., would not be permitted to purchase such stock in accordance with the formula set forth in decedent’s will. The executors, both of whom are stockholders in the corporation, contend that even if they were permitted to sell the common stock of Oakdale Farms, Inc., and the preferred stock of Waddington Milk Company, Inc., the proceeds therefrom would be grossly inadequate to meet the estate obligations and it would, therefore, be necessary to sell also a portion of the common stock of Waddington Milk Company, Inc. The executors further contend that, by the provision of the will above quoted, the testator intended to confer a benefit upon the stockholders of the corporation and that the provision of the will contemplates that it might be necessary to sell more than 20% of the stock in the corporation in order to satisfy the general legacies and to discharge the estate obligations. The executors also urge that the testamentary direction that the price of such stock should be fixed by book value without regard to good will, likewise indicates an intention to confer a benefit upon the stockholders of the corporation.
The primary responsibility and duty of a court in a construction proceeding is to ascertain and give effect to the intention of the testator. (Matter of Buechner, 226 N. Y. 440.) The first sentence in the quoted portion of the first codicil expressly prohibits the executors from selling any of the common stock of the corporation ‘ ‘ unless and until it becomes necessary * * * in order to raise sufficient monies ” to pay estate obligations. The second sentence of such quoted provision directs the executors to liquidate “ all other assets ” before resorting to the *552 common stock of the corporation to satisfy estate obligations. Moreover, there can be no doubt as to the quantity of the stock of the corporation which was to be liquidated, for he expressly provided that only so much of the stock should be sold as was ‘ ‘ required to raise the necessary funds ’ ’ to discharge general legacies and estate obligations.
In Matter of Burnett (89 N. Y. S. 2d 152), the testator directed his executor “in its sole discretion, to pay and distribute my estate to the legatees, as specified in my Last Will and Testament, in kind ”. In analyzing the testamentary direction contained in that will, this court referred to Villard v. Villard (219 N. Y. 482) in which the opinion by Chase, J., stated at page 500: “ A legacy or other payment pursuant to a direction in a will is ordinarily payable in cash, but it does not prevent any other form of payment which is acceptable to the payee.” This court then concluded that where a testator manifests an intention that a legacy shall be satisfied by delivery in kind, such intention will be enforced.
The provision for disposition of the residuary estate to the widow of testator as sole beneficiary is couched in the usual terms of a devise and bequest of such residue as distinguished from a direction for payment to such beneficiary. This provision when read in conjunction with the other pertinent provisions of the will clearly indicates that the testator contemplated distribution in kind to his widow, especially as to the balance of the shares of stock in the corporation.
The executors also contend that since the will fixed the price of the stock in accordance with a formula which failed to take into consideration the value of the good will of the corporation, the testator intended to confer a benefit upon the stockholders of the corporation. This contention is overruled and dismissed. In effect, the court is asked to conclude that the testator intended to prefer the stockholders of the corporation over the widow of testator in the event that the assets of the estate, exclusive of the stock, were insufficient to defray estate expenses and satisfy the general legacies.
From a reading of the entire will it is clear that the widow of testator was the primary object of his bounty and that she was to be preferred over all others, especially as to the balance of the common stock of the corporation. Not only was she named as sole beneficiary of the residuary estate but the intent is clear that such stock was to be delivered in kind to the widow as sole beneficiary of the residuary estate, to the extent that delivery in kind was reasonably possible. The court accordingly determines that the testator did not intend to prefer the *553 stockholders of the corporation over his widow or to deprive her of the opportunity of advancing the moneys necessary to defray estate expenses and satisfy the provisions for general legacies in order to avoid the necessity of selling such stock. The court determines that the widow of testator is empowered to advance additional moneys as required to defray any unpaid expenses and to satisfy the general legacies in order to permit the delivery in kind to her of the balance of common stock in the corporation.
Settle decree accordingly, providing for the restoration of the proceeding to the calendar for May 7, 1957 at 10:30 a.m. in order to fix the date for the trial of the issues raised by the objections to the account.